UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| WILLIAM D. BRANNON, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 1:07-CV-84/1:03-CR-98 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| UNITED STATES OF AMERICA ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM**

*Pro se* petitioner William D. Brannon ("Petitioner") filed a petition to vacate his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 112) and a supporting memorandum (Court File No. 113).[1] The United States filed a response (Court File No. 126). Petitioner then supplemented his original petition with additional memoranda on two separate occasions (Court File Nos. 123, 133). The United States filed responses to both of these subsequent filings (Court File Nos. 131, 147).

Having reviewed the materials thus submitted, together with the record of the underlying criminal case, the Court finds they conclusively show Petitioner is not entitled to relief on the claims asserted; thus, an evidentiary hearing is not needed in this matter. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993). Accordingly, the Court will decide the matter and explain the reasons Petitioner's asserted grounds for relief are without merit. *See* Rule 8(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts.

---

[1]All citations are to case number 1:03-CR-98.

## I. BACKGROUND

### A. Factual Background

Beginning in June 1997, Petitioner and his co-defendant, Dianna Blair-Torbett, devised a scheme to defraud investors.[2] Blair-Torbett would falsely represent to potential investors she could double or triple the investors' money in a short period of time through various entities and the investment would receive a 24% annual interest payment. Blair-Torbett conducted the business from her residence in Etowah, Tennessee. She utilized the assistance of friends, in numerous locations, to supply her with information about potential clients. Blair-Torbett would then send out mailings/brochures to potential investors showing positive information about her business. Petitioner and Blair-Torbett would then hold investment meetings with these potential investors to show videos and to answer questions the investors might have about their business.

Neither Blair-Torbett nor any of the entities through which she operated ever earned a profit from any investment. Blair-Torbett paid some investors with other investors' money to create the impression with the original investors that they could make money using her business. The activity gave the original investor a sense of security in order to get them to invest more money with her. Blair-Torbett claimed the investments would be secured and collateralized by gold concentrate located in vaults maintained on the premises of West Texas Metals in El Paso, Texas.

Petitioner was the owner and operator of West Texas Metals ("WTM"). WTM claimed to be in the business of converting common ores into precious metals such as gold and platinum, as well as excavating precious minerals and metals. Acting under the name of a non-existent

---

[2] All of the facts are taken from the Presentence Investigation Report ("PSR") unless otherwise noted.

corporation called McMinn Consultants, Ltd., Blair-Torbett entered into a number of contracts with Petitioner, one of which they executed in June 1997 that required her to pay one billion, two hundred million dollars ($1,200,000,000) per year as a minimum payment for a term of five years. Blair-Torbett agreed to act as the financing arm of WTM. Blair-Torbett created this contract to give the appearance that WTM and McMinn Consultants were substantial and profitable entities.

During the period of August to November 1997, McMinn Consultants, using investor money, purchased magnetite from Cobra Mining Company in New Mexico at a cost of $20 per ton. Magnetite consists of the mineral form of black iron oxide that often occurs with magnesium, zinc, and manganese and is an important ore of iron. The magnetite was shipped to WTL and placed in vaults also paid for by McMinn Consultants with investor funds. This magnetite was described by both Blair-Torbett and Petitioner as being "gold concentrate." Investors were advised their investments were backed by this gold concentrate which Petitioner valued in the billions of dollars, though the material was in fact common and essentially worthless minerals. Petitioner also claimed WTL property contained gold with an estimated "in ground value per appraisal of $41,512,500,000." Both Petitioner and his co-defendant used money from investors to obtain a $90,000,000 insurance policy for the purposes of reassuring and encouraging investors that there was gold located in the vaults at WTM. Petitioner later attempted to defraud the insurance company by claiming the gold was stolen.

### B. Procedural Background

On April 22, 2003, Petitioner was indicted with twenty-one counts of fraudulent interstate transportation of money in violation of 18 U.S.C. § 2314 (Court File No. 13). Following a three-day jury trial before this Court, Petitioner was found guilty on nineteen of the twenty-one counts (Court

File No. 51). On September 2, 2004, the Court sentenced Petitioner to 97 months of imprisonment to be served concurrently on all counts, imposed three years of supervised release, and ordered $4,845,165 in restitution (Court File No. 64).

Petitioner appealed the verdict and the Court's sentence to the United States Court of Appeals for the Sixth Circuit. On appeal, Petitioner argued 1) there was insufficient evidence to support his conviction and 2) the Court erred at sentencing in granting the government's motion for an upward departure based upon psychological harm to the victims. The Sixth Circuit rejected both of Petitioner's arguments and affirmed this Court in an unpublished order entered January 27, 2006 (Court File No. 98).

On April 13, 2007, Petitioner timely filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Court File No. 112). On July 30, 2007, Petitioner filed a proposed supplement to his memorandum in support of his § 2255 motion (Court File No. 123). On August 23, 2007, the Court granted Petitioner leave to supplement his original motion (Court File No. 125). On September 7, 2007, Petitioner filed a second request to amend and/or supplement his memorandum in support of his § 2255 motion (Court File No. 133), which the Court also accepted (Court File No. 140). By Court order, the Government has responded to all three of Petitioner's filings concerning his § 2255 motion (Court File Nos. 126, 131, 147).

## II. STANDARD OF REVIEW

This Court must vacate and set aside the sentence if it finds "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of

the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. Under Rule 8(a) of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to review the answer, any transcripts, and records of prior proceedings and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959), *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

## III. ANALYSIS

In his original motion, Petitioner argues he received constitutionally ineffective assistance of counsel and the Court imposed an "unfair and biased sentence." In the first supplement to his memorandum, Petitioner added to the list of his counsel's shortcomings and alleged the Government failed to disclose exculpatory evidence. In his second supplement, Petitioner attached documentary evidence, which he alleges his counsel should have given to the jury at trial and which the Government unconstitutionally failed to disclose. Petitioner also asserted his prosecution was barred by the statute of limitations.

Petitioner's asserted grounds for relief will be addressed in the following order: a) whether Petitioner received ineffective assistance of counsel, b) whether the Government failed to disclose exculpatory evidence, c) whether Petitioner received a constitutionally defective sentence, and d) whether Petitioner's prosecution was barred by the statute of limitations.

### A. Ineffective Assistance of Counsel Claims

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

Petitioner asserts five claims against his trial counsel which he argues deprived him of the effective assistance of counsel guaranteed under the Sixth Amendment: 1) failing to investigate his competency to stand trial; 2) failing to advise Petitioner he had the ultimate decision about whether to testify at trial; 3) failing to obtain documents then known to be exculpatory; 4) failing to present mitigating evidence at this sentencing hearing; and 5) making remarks in the opening statement and closing statements that prejudiced Petitioner.

### 1. Investigating Petitioner's Competency to Stand Trial

Petitioner asserts his trial counsel rendered ineffective assistance when his counsel failed to investigate Petitioner's competency to stand trial. According to Petitioner, in the weeks and months leading up to his trial, Petitioner appeared "out of it," distant and remote (Court File No. 113, at 13). He asserts his condition was such that he was unable to accurately recall the names and contact information for several potential defense witnesses, causing his trial counsel to opine Petitioner was "less than helpful" in assisting in his own defense (*id.*). In addition, Petitioner asserts he suffered from severe heart problems, chronic sleep apnea, and alcohol abuse.

The test for competency to stand trial is "whether a criminal defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *United States v. Newton*, 389 F.3d 631, 637 (6th Cir. 2004) (quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975)). "[A] trial court must always be alert for circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Id.* at 637 (citing *Drope*, 420 U.S. at 181).

Here, none of the factors stated by Petitioner touch on his competency to stand trial. The

majority of Petitioner's argument rests on his physical health problems, including a severe heart problem, and not his cognitive ability. The record does indicate Petitioner suffered from a heart condition at the time of his trial, but Petitioner has provided nothing to link that physical health issue to his cognitive abilities. Instead, Petitioner asserts if he had been given the opportunity, two well-known neurologists *might* have evaluated Petitioner and provided affidavits that asserted Petitioner's heart condition had affected his cognitive ability.

In order to show ineffective assistance of counsel, Petitioner must show "a reasonable probability" that but for his counsel's shortcoming the result would have been different. *Strickland*, 466 U.S. at 691. All of Petitioner's arguments concerning his physical health issues are pure speculation as to what might have been, with no actual evidence to back up the conjectures. There is no attempt made to show a probability that the result would have differed had Petitioner's trial counsel investigated the effect of his heart condition on his cognitive ability. Therefore, Petitioner's heart condition is irrelevant to the present analysis.

Moreover, the remaining portions of Petitioner's argument, which do deal directly with his cognitive abilities, are likewise insufficient to show prejudice. For example, Petitioner asserts acquaintances found him "out of it," distant, and remote. In addition, Petitioner asserts his trial counsel characterized him as "less than helpful" when he could not recall names or addresses of potential defense witnesses. These lay observations, however, do not establish Petitioner was unable to rationally understand the proceedings against him. Even if the Court found these assertions to be entirely credible, they fail to reach Petitioner's burden of showing a reasonable probability that an investigation into his mental state would have revealed he was incompetent. *See Strickland*, 466 U.S. at 691. Many, if not most, defendants are affected by the stress of a criminal trial. That his

9

acquaintances observed these facts in him is not surprising. In addition, Petitioner's statement that his trial counsel found his memory "less than helpful" is itself indicative that Petitioner was rationally aware of the proceedings and attempted to assist in the preparation of his defense.

In contrast, there is ample evidence in the record to indicate the result would have been the same even if Petitioner's trial counsel had made an issue of his competency. For example, the PSR prepared shortly after trial flatly states, "There is no indication in his personal history that Mr. Brannon has any mental health problems. He denies he has ever been evaluated or treated for psychological problems." (PSR ¶ 45). In addition, the Court had the opportunity to observe Petitioner through the course of the trial and during his sentencing. Nothing at that time indicated to the Court that Petitioner was in need of mental evaluation. If it had, the Court would have been under an obligation to have Petitioner evaluated *sua sponte*. *See Newton*, 389 F.3d at 637. Rather, Petitioner made a statement at his sentencing hearing in which he suggested his co-defendant was much more culpable than himself (Court File No. 81, at 38-39). This strongly indicates Petitioner had a rational understanding of the proceedings against him: he was able to evaluate his own actions before trial and was able to translate that evaluation into a coherent argument for leniency.

In other words, all of the evidence in the record suggests there is a reasonable probability Petitioner would have been found competent to stand trial even if his trial counsel had conducted an investigation into the matter. *See id.* Therefore, the Court concludes Petitioner's trial counsel was not ineffective in failing to raise the issue.

### 2. Petitioner's Right to Testify

Petitioner asserts his trial counsel provided ineffective assistance when he failed to advise Petitioner of his right to testify on his own behalf. According to Petitioner, his counsel "simply told

him he was not going to testify because he did not have the time to go through the boxes of discovery produced by the government nor review the same with Mr. Brannon prior to trial." (Court File No. 113, at 23).

A defendant has a fundamental right to testify on his own behalf. *United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007). Only a defendant may waive this right; it cannot be waived by his counsel. *Id.* "However, not all fundamental rights must be waived by the defendant after an on-the-record colloquy with the court. The waiver of certain fundamental rights can be presumed from a defendant's conduct alone, absent circumstances giving rise to a contrary inference." *Id.* (citations omitted).

The Court finds Petitioner cannot carry his burden to show either of the two *Strickland* prongs. To establish the first prong of *Strickland*, Petitioner must identify evidence in the record which suggests he wanted to testify and was prevented from doing so. *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009). In the absence of such evidence, "[t]his court entertains a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with his client." *Id.*

Here, Petitioner has no evidence other than his own assertion that his counsel intentionally disregarded his right to testify. Petitioner himself admits his attorney has a general practice of discussing this issue with his clients (Court File No. 113, at 24). Yet Petitioner offers nothing but his own self-serving assertion to suggest his counsel departed from his standard practice in this specific case. To be entitled to relief, Petitioner must point to some factual material by which the Court may test the validity of his assertions. *See Green*, 454 F.2d at 53. Petitioner is unable to do so.

11

Rather, the Court is led to conclude Petitioner was in fact well advised of his right to testify on his own behalf. As the record indicates, Petitioner remained silent during the trial and never did anything to indicate to the Court he had a desire to testify. The Court is entitled to presume from a defendant's silence he does not wish to testify. *See Stover*, 474 F.3d at 908. Without some evidence to the contrary, the Court will not depart from this presumption.

In addition, Petitioner has failed to establish prejudice. To establish the second *Strickland* prong, Petitioner must show his testimony would have altered the jury's verdict. *Hodge*, 579 F.3d at 640. Where a petitioner gives no detail about the substance of the testimony he would have provided and merely speculates it would have had an impact on the jury's views, petitioner fails to establish prejudice. *Id.* Here, Petitioner has offered absolutely no detail as to what the substance of his testimony would have been. Therefore, Petitioner cannot establish the prejudice necessary to show ineffective assistance of counsel with regard to his right to decide whether to testify.

### 3. Failure to Investigate Exculpatory Evidence

Petitioner asserts his trial counsel provided ineffective assistance because the trial counsel refused to travel to El Paso, Texas, to collect business records and other documentary evidence that would have proven Petitioner's innocence (Court File No. 123, at 1-3). Though Petitioner was tried and convicted in the Eastern District of Tennessee, his role in the conspiracy for which he was convicted involved his business dealings in El Paso, Texas. Petitioner asserts he urged his court appointed attorney on several occasions to travel to El Paso, but the attorney refused. Attached to Petitioner's motion are a series of documents that Petitioner argues demonstrates his counsel's failure to travel to El Paso, Texas, prejudiced his defense (*see* Court File No. 133-1).

All of the documents relate to Petitioner's attempt to borrow $500,000,000 from Landbase

12

International Ltd. ("Landbase") and British American Ltd., both corporate entities run by Williston Clover. Petitioner hoped to borrow this astoundingly high figure, using what he asserted was gold concentrate valued at $2.7 billion stored in his vaults. All of the documents arise from that transaction:

- Exhibit 1(a) is a letter from Mr. Clover asking for the assay reports on the $1.5 billion in collateral being posted for the loan.
- Exhibit 1(b) is an email from Mr. Clover to co-defendant Blair-Torbett, discussing details of the impending deal.
- Exhibit 2 is Mr. Clover's confirmation that Petitioner had appointed Blair-Torbett to act as his agent in the transaction.
- Exhibit 3 is a deed granting Landbase rights to a separate vault facility on the property owned by WTM in which to house the collateral securing the loan.
- Exhibit 4 is a letter from Landbase to co-defendant Blair-Torbett, asking for portions of the gold concentrate to be shipped to Salt Lake City, Utah.
- Exhibit 5(a) is a shipment receipt for cargo alleged to be soil samples that were sent to Landbase.
- Exhibit 5(b) are hand written laboratory notes, presumably analyzing the samples from Exhibit 5(a). The notes state the samples were gold concentrate worth fifty million dollars.
- Exhibits 6(a) and 6(b) are correspondence from British American Ltd., also signed by Mr. Clover, discussing Petitioner's agreement to borrow $500,000,000, using $2.7 billion worth of gold concentrate as collateral.

Petitioner argues these exhibits demonstrate he ran a legitimate company, and he claims his counsel provided ineffective assistance in offering them to the jury. In order to show Petitioner's counsel rendered ineffective assistance in failing to offer these documents into evidence, Petitioner must show that but for that omission, the result would have been different. *See Strickland*, 466 U.S. at 691.

While all of these exhibits suggest Petitioner tried to borrow $500 million using $2.7 billion worth of gold concentrate as collateral, none of these exhibits suggest Petitioner ever actually owned $2.7 billion worth of gold concentrate. At trial, however, the Government put on considerable proof that Petitioner never owned such assets. For example, all of Petitioner's assertions that the ore was

13

worth $2.7 billion were based on reports allegedly authored by William Macon Sheppard, a chemical engineer. At trial, however, Sheppard testified he did not author these reports and the signature on the reports was a forgery. Even the exhibits which Petitioner now offers reference these same fraudulent reports. Thus, they do nothing to counter the Government's claim that Petitioner did not own the asserted collateral, and thus was attempting to perpetrate a fraud.

In sum, Petitioner was not prejudiced by his trial counsel's failure to enter these documents into evidence. In fact, his trial counsel would have likely been acting unwisely if he had. These documents do nothing more than suggest Petitioner was trying to further his fraud and obtain even more money than he did. Because there is not a reasonable probability these documents would have altered the jury's verdict, Petitioner has failed to show he received ineffective assistance of counsel.

### 4. Failure to Present Mitigating Evidence

Petitioner asserts he received ineffective assistance of counsel at his sentencing hearing, because his counsel failed to provide mitigating evidence. To show this failure caused him prejudice, Petitioner must identify the mitigating evidence that should have been presented and show a reasonable probability the result would have differed if that evidence had been submitted. *Webb v. Mitchell*, 586 F.3d 383, 393 (6th Cir. 2009). To do this, Petitioner must show the evidence "trial counsel should have uncovered 'differs in a substantial way–in strength and subject matter–from the evidence actually presented.'" *Id.* (quoting *Hill v. Mitchell*, 404 F.3d 308, 319 (6th Cir. 2005).

Here, Petitioner does not identify any specific evidence that his trial counsel should have presented. He merely makes a general assertion he received ineffective assistance because his counsel did not offer mitigating evidence. If Petitioner does not identify specific evidence, then he

cannot meet his burden of showing a reasonable probability the mitigating evidence would have changed the sentence imposed by this Court. *See Webb*, 586 F.3d at 393. Therefore, Petitioner has failed to show he was prejudiced by his counsel's omission. Without a showing of prejudice, the Court concludes Petitioner has not demonstrated ineffective assistance of counsel at his sentencing. *See Strickland*, 466 U.S. at 691.

### 5. Prejudicial Comments During Opening and Closing Statements

Petitioner argues he received ineffective assistance of counsel, because his counsel "all but conceded the government's theory–that the entire extraction process was a sham." Specifically, Petitioner complains his counsel stated during opening statement Petitioner was "unconventional" and, later in closing, referred to Petitioner's business as "strange" and "ridiculous." (Court File No. 113, at 8).

When evaluating the performance of trial counsel, this Court remains highly deferential. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). The Court does not "second-guess" counsel's tactical decisions. *Strickland*, 466 U.S. at 689. The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy." *Id.*

In this case, Petitioner was being tried for running a business which attempted to extract precious metals from ordinary minerals. An ordinary juror may very well find such a business to be "strange" and "ridiculous." At face value, the Court sees nothing about these statements that would be prejudicial to Petitioner. It is apparent his attorney hoped to gain the jury's trust by conceding Petitioner was engaged in an usual business. Trial counsel's strategy appeared to be to

15

argue that, though Petitioner was unconventional, he acted only in good faith and never with the intent to defraud. It was not, as Petitioner suggests, a concession that Petitioner was engaged in a sham business.

Moreover, Petitioner has not offered anything to suggest to this Court the jury's verdict would have been different but for these statements. The facts of this case were essentially undisputed. Petitioner's trial counsel had no choice but to admit the facts and argue the Government simply lacked evidence of Petitioner's intent. Without prejudice, the Court can find no ineffective assistance of counsel.

**B.     Government's Failure to Disclose Exculpatory Evidence**

Petitioner asserts the Government failed to disclose exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The evidence Petitioner asserts violates *Brady* is the same evidence he identified in conjunction with his argument that his attorney rendered ineffective assistance by failing to travel to El Paso, Texas, as discussed above. Petitioner states the Government "had access to many, if not all, the business records" and, therefore, it should have disclosed them when Petitioner's attorney failed to investigate them (Court File No. 123, at 4).

"There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a Brady claim, petitioner must show: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. See *Carter v. Bell*, 218 F.3d 581,

601 (6th Cir.2000); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601.

As the Government notes, Petitioner's argument concedes the evidence was known to him at the time of his trial: if he had asked his attorney to travel to El Paso, Texas, to obtain the documents, it stands to reason he knew they existed. Therefore, there was no intentional or inadvertent suppression on the part of the Government. In addition, as discussed above, even if there had been suppression, there is no prejudice. The documents identified by Petitioner do no establish his innocence nor are they even probative of that fact. The documents relate only to his attempt to secure a loan based on collateral he did not own. Therefore, Petitioner has not established a *Brady* violation.

### C. Constitutionality of Petitioner's Sentence

Petitioner asserts he received an "unfair and biased sentence" in his motion, but fails to explain this claim in either his motion or the supporting memoranda.

A § 2255 motion must set forth facts which entitle the defendant to relief. *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735. "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum*, 262 F.2d at 867. Because Petitioner does not explain how he believes his sentence was "unfair and biased," he is not entitled to relief.

The Court also notes Petitioner litigated the soundness of his sentence on his direct appeal

before the Sixth Circuit. It is well established that issues which are presented and considered on direct appeal cannot be litigated again in a subsequent § 2255 proceeding absent exceptional circumstances or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir.1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir.1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir.1996). If Petitioner intends to restate his claim that he inappropriately received an upward departure, that claim cannot be reasserted on collateral review.

### D. Statute of Limitations

Petitioner argues his prosecution was barred by the statute of limitations. This argument is without merit. First, the argument is waived, because Petitioner did not raise the issue either at trial or in his direct appeal. *See United States v. Titterington*, 374 F.3d 453, 459 (6th Cir. 2004); *United States v. Taylor*, 207 F.2d 437, 438 (2d Cir. 1953) (holding defendant who had been convicted of violating 18 U.S.C. § 2314 could not raise statute of limitations issue for the first time in motion to vacate brought pursuant to § 2255).

Second, even if the argument were not waived, it lacks substantive merit. Petitioner was convicted for violating 18 U.S.C. § 2314. Under 18 U.S.C. § 3282(a), violations of § 2314 carry a five-year statute of limitations. The act violating § 2314 is the interstate transportation of property obtained by fraud. The indictment alleged Petitioner's offense began on April 23, 1998 and concluded on September 26, 2000 (Court File No. 13). Thus, all of Petitioner's offensive conduct occurred within five years of the date of the indictment, which was April 22, 2003 (*see id.*). There was no violation of the applicable statute of limitations.

## IV. CONCLUSION

For the reasons stated above, Petitioner is not entitled to any relief under 28 U.S.C. § 2255. Accordingly, Petitioner's motion to vacate, set aside, or correct his sentence will be **DENIED**.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**